BRADLEY, Circuit Justice. According to the testimony of the master and pilots of the Great Republic, the grounding of the steamboat which caused the delay and loss complained of in this case occurred in this way: The steamer was drawing about seven and a half feet of water. The place where the accident occurred was near a bar called "Perry's Towhead," and was known to be a dangerous and an uncertain place, where the channel, in times of floating ice, frequently changed. As they neared it, the master said to the pilot: "If you don't think that you can run this place with safety, I would rather you would round the boat and let her go into the bank." The latter stated, in answer, that the reports were that they had nine and a half feet of water there; that it was a very loggy and rough place. The master then said that they would have to float over it; telling the pilot to go into it, and go as easy as possible, so that if they did hit anything it would not hurt the boat. The steamer soon commenced rubbing the ground, and then they began to back her, and would have got clear again but for a small steamboat following them in the rear. She was so close that they were in imminent danger of collision. To prevent this catastrophe, they stopped backing, and then the Great Republic again grounded at the stem, and her stern was swung around by the current, and she became stranded and frozen up for several days. The weather was extremely cold, several degrees below zero. Ice was forming as well as floating in the river. The boat was soon enveloped in such a pack of it as to endanger her safety. The subsequent efforts to get clear from their position, to relieve the vessel by unloading the cargo, and to get started again on the voyage, seem to have been dictated by the ordinary skill and care due to such a combination of circumstances. The pilot's knowledge of the place in question depended on his examination of the river by passing up in a steamboat two nights previously. When passing this place, however, they took no soundings on account of the ice, the cold, and darkness of the night; but they had learned from another pilot coming down the river that there was nine and a half feet of water at this point, and that the depth of water or channel was where the Great Republic attempted to pass through.

The question is, whether everything was done in this case which reasonable care and skill required in navigating such a channel at such a time. It was shown that the pilots on the Mississippi are in the habit of getting their knowledge of the channel and its changes from each other; that they have formed themselves into an association for this purpose, and that it is the duty of the members to communicate this information, and that all of them rely on it. Sounding, of course, is constantly resorted to in doubtful and dangerous places when sounding is prac-

ticable. But the master and pilots of the Great Republic state that it was impracticable to make soundings with the yawls, or sounding boat, on account of the ice, which was rolling very thick.

Under these circumstances, the question is reduced to this: Whether at that time, and under those circumstances, they ought to have ventured into the place in question at all; whether, in other words, they had sufficient knowledge of the channel to authorize them to proceed; or whether they should have run to shore and laid by. In my judgment, according to the custom of the river, they were justified in acting upon the intelligence which they had. The libel must be dismissed.

---

## Case No. 8,303.
### LEVY v. JAMISON et al.

[The case reported under above title in 1 Law & Eq. Rep. 52, is the same as Case No. 8,271.]

---

LEVY (MAXFIELD v.). See Case No. 9,321.

---

## Case No. 8,304.
### LEVY v. VIRGINIA FIRE & MARINE INS. CO.

[9 Ins. Law. J. 113.]

Circuit Court, D. Louisiana. Dec. 23, 1879.

FIRE INSURANCE—LIMITATION IN POLICY.

[In a policy which provides for proofs of loss, and arbitration of differences as to amount of damage, and forbids the bringing of suit until an award is made, a limitation requiring suit to be brought within six months after the "loss or damage shall occur" means six months after the amount of the loss is thus ascertained, and not six months from the date of the fire.]

[This was an action on a policy of fire insurance.]

BILLINGS. District Judge. The plaintiff was insured against loss by fire by defendants. There was fire and loss. To a suit brought by plaintiff upon the policy of insurance, the defendants, among other defenses, plead, by way of exception, that according to the provisions of the policy the action is barred by the lapse of time. The submission to the court of the cause at the present time is simply as to the question: "Was this suit instituted within the time fixed within the terms of the policy of insurance, excluding from consideration all facts tending to show any waiver by the defendants of the limitation, and confining the inquiry to an interpretation of the policy itself?" The policy stipulates that the "loss or damage shall be paid sixty days after the proofs required by this company shall have been received at their office in Richmond, and the loss shall have been satisfactorily ascertained and proved as re-